IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS LAW SHIELD, LLP | § | |
|     Plaintiff, | § | |
| vs. | § | CIVIL ACTION |
| | § | |
| FUSEBILL INC. | § | |
|     Defendant. | § | JURY DEMANDED |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION
FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION
AND PERMANENT INJUNCTION**

Plaintiff Texas Law Shield, LLP files this Original Complaint and Application for Temporary Restraining Order, Preliminary and Permanent Injunction against Fusebill Inc. and shows the following:

## I. Introduction

1. Plaintiff TLS offers educational and prepaid legal services to more than 100,000 gun owners in Texas. TLS customers pay $10.95 per month for its services. Defendant Fusebill provides recurrent billing services to TLS and other companies whose customers pay their monthly bills via a credit card or other electronic means.

2. TLS brings this case because Fusebill has breached the parties' agreement and is tortiously interfering with its prospective business relations by refusing to make TLS' customer credit card and payment data available for transfer to one of Fusebill's competitors.

## II. Parties

3. Plaintiff TLS is a company organized and doing business under the laws of Texas.

4. Defendant Fusebill Inc. is a registered corporation in Ontario, Canada with its registered office at 302-232 Herzberg Rd, KANATA, Ontario, K2K 2A1, Canada. Fusebill can be served with process under the Hague Convention by serving Cynthia Gallagher, Ministry of

the Attorney General, Central Authority for Ontario, PO Box 640, Downsview, Ontario M3M 3A3.

### III. Jurisdiction and Venue

5. This is a civil action for breach of contract, tortious interference with prospective relations and conversion.

6. This Court has original jurisdiction of this civil action under 28 U.S.C. §§ 1331 and 1338.

7. Venue is proper in the United States District Court of Texas, Houston Division because all or most of the events giving rise to this cause of action took place in Houston, Harris County, Texas.  28 U.S.C. § 124(b)(2) and because the parties contractually agreed that Harris County, Texas would be the mandatory venue for all disputes.

### IV. Factual Background

8. In February 2014, TLS entered an agreement with Fusebill to assist with the collection, maintenance and processing of the recurring monthly bills of TLS' customers. The agreement consists of an individualized term sheet and Fusebill's standard Terms and Conditions. A copy of the agreement is attached as Exhibit A.

9. TLS paid Fusebill a one time set up, design and implementation charge of $83,000.  TLS further agreed to pay and has paid monthly recurring fees of approximately $15,000 based on the number of TLS customers and credit card swipers utilized.  TLS also agreed to pay and has paid Fusebill an annual $5,000 charge for maintenance and support.

10. Pursuant to the terms of the agreement, all information, statistics and materials related to TLS' customers' transactions (the "Data") belongs to and is owned by TLS and TLS has the right to retrieve its Data at anytime (see sections 3.3 and 4.2 of the agreement).  For each

of TLS' customers, this Data includes the following fields within Fusebill's system: (1) a unique customer ID, (2) customer first name, (3) customer last name, (4) customer credit card number, (5) customer credit card expiration date and (6) customer address (collectively, this Data is referred to as the "Data At Issue").

11.     Under the agreement, TLS has the right to terminate upon 30 days written notice at any time there exists a material breach that is not remedied to the satisfaction of TLS.  TLS invoked that right and gave notice of termination in June 2015, advising Fusebill that it would pay for its services through December of 2015.  TLS did so after Fusebill caused TLS to suffer substantial monetary losses because of inconsistent performance of the services promised and because in June 2015, Fusebill notified TLS that it was substantially reducing and ultimately eliminating the support it was providing for the platform on which TLS' customer credit card data was being processed.

12.     As a result, TLS concluded it needed to transfer its recurring credit card processing business to another vendor in order to maintain its operations and provide its 100,000 plus customers with the same level of service they are contractually entitled to receive.  TLS then began looking for an alternative vendor to handle the recurring credit card payments and related transactions for its customers.

13.     In September, TLS notified Fusebill that it wanted to retrieve the Data At Issue for transfer to one of Fusebill's competitors between November 2d and 4th of this year. Initially, Fusebill responded angrily - claiming that it owned all of the US and Canadian patents for the ability to transact credit card data from a point of sale terminal/card reader and process recurring transactions from that data - and threatened to use the $71 billion dollar pension fund that backed it to pursue "full legal efforts to ensure that our patents are not infringed upon."   Fusebill then

said it would not allow TLS to retrieve the Data At Issue during the time frame requested unless TLS paid Fusebill $34,950. And that if TLS wouldn't pay the $34,950, it would have to wait until the middle of February 2016 to retrieve the Data At Issue.

14. According to a TLS senior IT Officer and Computer Programmer, the process of transferring of the Data At Issue should take less than five (5) minutes of programmer time and no more than an hour or two of computer processing time once the programmer finishes his or her work. The support involved is the functional equivalent of clicking file, export, then selecting the six (6) fields that make up the Data At Issue, giving the file of the data to be exported a name and location and hitting the "enter" button on a keyboard. See Exhibit B, Affidavit of Philip Martella.

15. Fusebill's conduct gives rise to the following causes of action.

## VI. Causes of Action

**Count 1 – Breach of Contract**

16. TLS reasserts the facts and allegations set forth in paragraphs 1 through 15 above.

17. Fusebill entered an agreement with TLS that provided TLS owned the Data At Issue and could retrieve it at anytime.

18. Fusebill's refusal to permit TLS to retrieve the Data At Issue during the timeframe requested by TLS constitutes a breach of contract. Fusebill's breach is the proximate cause of TLS' damages.

**Count 2 – Tortious Interference with Prospective Relations or Alternatively with Tortious Interference With an Existing Contract**

19. TLS reasserts the facts and allegations set forth in paragraphs 1 through 18 above.

20. There is a reasonable probability that TLS would have entered into a business relationship with a third person. Fusebill is intentionally interfering with such relationship by

refusing to permit TLS to retrieve the Data At Issue during the time frame requested.  Fusebill's conduct is independently tortious or unlawful.  Fusebill's interference proximately caused TLS's injury and TLS has suffered actual damage or loss.

21. Alternatively, TLS has a valid contract with a third person.  Fusebill is willfully and intentionally interfering with the contract by refusing to permit TLS to retrieve the Data At Issue during the time frame requested.  Fusebill's interference proximately caused TLS' injury and TLS has suffered actual damage or loss.

**Count 3 – Conversion**

22. TLS reasserts the facts and allegations set forth in paragraphs 1 through 22 above.

23. TLS owned, possessed, or had the right to immediate possession of the Data At Issue.  The Data At Issue is personal property.  Fusebill wrongfully exercised dominion or control over the Data At Issue by refusing to permit TLS to retrieve the Data At Issue during the time frame requested.  Fusebill's wrongful conduct caused TLS to suffer injury.

VII. Application for TRO Against Fusebill

24. TLS reasserts the facts and allegations set forth in paragraphs 1 through 23 above.

25. TLS seeks a temporary restraining order and also a preliminary and permanent injunction prohibiting Fusebill from precluding TLS from continuing to hijack the Data At Issue for TLS' 100,000 plus customers and to require Fusebill to produce such data to TLS' new vendor by November 2, 2015.

26. Preventing TLS from retrieving the Data At Issue jeopardizes its operations and puts TLS' existence at risk – particularly since Fusebill substantially reduced the support it was provided for the platform on which TLS' customer credit data is processed.  TLS cannot operate effectively with a credit card vendor who has failed to provide the services promised and who

added insult to injury by substantially reducing the support it was providing for the platform on which TLS' customer credit card data was being processed.  TLS needs to retrieve the Data At Issue for migration to a new vendor by November 4, 2015, or it faces immediate and irreparable harm and injury to its operations.

27. The balance of equities between TLS on the one hand and Fusebill on the other hand favor the issuance of immediate injunctive relief.  Fusebill will suffer no harm.  It has received all monthly fees, an annual $5,000 payment for maintenance and support and TLS has agreed to pay for Fusebill's services through December 31, 2015, even though it intends to transfer its service by November 4, 2015.  On the other hand, failure to grant injunctive relief would, in effect, sanction Fusebill's tortious interference with TLS' prospective business relations and put TLS' entire existence at risk.

28. The issuance of injunctive relief will not adversely affect public policy.  In fact, it is the public policy of the United States to enforce agreements and prevent tortious interference with prospective relations.

29. For the reasons articulated herein, TLS respectfully requests a temporary restraining order against Fusebill which provides that:

   a. Fusebill be restrained from holding hostage or otherwise hijacking the Data At Issue for TLS 100,000 plus customers; and

   b. Fusebill shall produce within five (5) days of this Order all of the Data At Issue for migration onto TLS' new customer data vendor's system.

## VIII. Preliminary Injunction

30. TLS further requests that Fusebill be cited to appear and show cause and that upon such hearing a preliminary injunction be issued enjoining Fusebill from directly or indirectly violating the terms of paragraph 29 above (to the extent that a preliminary injunction

has not already been issued against them) and further enjoined in a manner that the Court deems appropriate and necessary to preserve the status quo.

## IX. Permanent Injunction

31.  TLS further requests that a permanent injunction be ordered on the final trial of this cause, enjoining Fusebill from directly or indirectly violating the terms of paragraph 29 above (to the extent that a preliminary injunction has not already been issued against them) and further enjoined in a manner that the Court deems appropriate and necessary to fully preserve the rights granted to the owner of TLS' customer data.

## X. Verification

32.  In addition to Exhibits A (the Agreement) and B (Affidavit of Philip Martella) referenced above, attached hereto in support of the forgoing application for injunctive relief is the Verification of Kirk Evans, all of which are incorporated herein by reference.

## XI. Conditions Precedent

33.  All conditions precedent to TLS' right to recover as herein alleged, if any, have been performed, have occurred or have been waived.

## XII. Jury Demand

34.  TLS demands a trial by jury.

## XIII. Prayer

35.  For these reasons, TLS asks for judgment against Fusebill for the following:

a)  Actual damages;

b)  A Temporary Restraining Order and Injunctive relief as set forth herein;

c)  Reasonable attorneys' fees pursuant to Tex. Bus. & Comm. Code § 16.104(c);

d)  Costs of court;

e)	Prejudgment and postjudgment interest; and

f)	All other relief the Court deems appropriate.

PREMISES CONSIDERED, TLS prays that the Court immediately issue a Temporary Restraining Order against Fusebill and, following notice and hearing, a Preliminary Injunction as requested above and that, upon final trial hereon, it have and recover judgment for the sought after relief, injunctive relief, damages, punitive damages, equitable relief, attorneys' fees, costs of court, prejudgment and post-judgment interest at the maximum lawful rates as requested above, together with such other and further relief to which it may be justly entitled.

Respectfully submitted,
**Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing PC**

*/s/ J. P. Kevin Leyendecker*
P. Kevin Leyendecker
*Attorney-in-charge*
State Bar No. 00784472
S.D. Tx Federal I.D. No. 28415
1221 McKinney Street, Suite 3460
Houston, Texas 77010
Tel.:	(713) 655-1101
Fax:	(713) 655-0062
kleyendecker@azalaw.com

**Attorney for Plaintiff TLS, LLP**

## VERIFICATION

BEFORE ME, the undersigned authority, a Notary Public authorized to administer oaths, on this day personally appeared Kirk Evans, who, after being duly sworn, did on his oath depose and state that he is the President of Texas Law Shield LLP and that he has read the above and foregoing Original Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction and, based on his personal knowledge, the facts contained therein are true and correct.

                                      Kirk Evans

Subscribed, sworn to and given under my hand and seal of office this 12th day of October, 2015.



                                      Notary Public

F. DAVID DONCHECZ
MY COMMISSION EXPIRES
March 21, 2018

Printed Name of Notary

My commission expires: